**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISON**

| | | |
|---|---|---|
| JOHN PAUL SULLIVAN, | ) | CASE NO. 1:25-cv-00140-SO |
| | ) | |
| | ) | UNITED STATES DISTRICT JUDGE |
| Plaintiff, | ) | SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| WARDEN MISTY MACKEY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

I.      **Introduction**

On January 15, 2025, Petitioner John Paul Sullivan ("Sullivan"), a prisoner in state custody, filed a pro se petition seeking a writ of habeas corpus under 28 U.S.C. § 2241. (ECF Doc. 1). On March 26, 2025, the District Judge referred the matter to determine whether Sullivan's Petition should be converted to a petition pursuant to 28 U.S.C. § 2254. (Non-document entry of Mar. 26, 2025). On the same day, I issued an Order finding that it was inappropriately filed pursuant to 28 U.S.C. § 2241, and in order for this petition to proceed, it must be recharacterized as a petition pursuant to 28 U.S.C. § 2254. (ECF Doc. 3, p. 1). Sullivan was notified that the Court would recharacterize his Petition to consider it pursuant to 28 U.S.C. § 2254; he was also given until April 30, 2025 to withdraw the petition if he did not wish for the recharacterization. (*Id.* at pp. 1-2; *see also* non-document entry of Mar. 27, 2025). On May 8, 2025, I noted that Sullivan had not withdrawn his petition or otherwise responded to the March 26, 2025 order and that the Court would accordingly proceed to consider his petition pursuant to 28 US.C. § 2254. (ECF Doc. 4).

1

On May 12, 2025, the District Judge referred the matter to me for issuance of a report and recommended decision. (Non-document entry of May 12, 2025). On August 4, 2025, the Respondent, Warden Misty Mackey ("Respondent" or "Warden") filed a Return of Writ. (ECF Doc. 9). Sullivan filed his Traverse on September 15, 2025. (ECF Doc. 11). The matter is now fully ripe, and I proceed to considering Sullivan's Petition.

## II.        Factual Background

Ohio's Ninth District Court of Appeals summarized the facts of Sullivan's case as follows:

{¶2} In September 2018, Sullivan was indicted on one count of aggravated murder, two counts of murder, two counts of felonious assault, one count of tampering with evidence, and one count of having weapons while under disability. Firearm specifications accompanied all the charges aside from the count of having weapons while under disability. The charges stemmed from a murder for hire that took place in July 2018. Sullivan and another man were hired to kill the victim.

{¶3} In December 2018, Sullivan pleaded guilty to the indictment. While there was no agreed upon sentence, the written plea agreement included a merger analysis indicating that counts two through five were allied with count one and that the State elected to proceed to sentencing on count one and that sentences were to be imposed on counts six and seven. The trial court sentenced Sullivan to an aggregate sentence of life in prison with parole eligibility after 39 years.

{¶4} On January 10, 2019, Sullivan filed a pro se notice of appeal. Counsel was thereafter appointed. While the appeal was pending, Sullivan filed a pro se motion to withdraw his plea in the trial court. The trial court denied the motion.

{¶5} On March 17, 2020, Sullivan filed a petition for postconviction relief and a motion to withdraw his plea. On March 20, 2020, Sullivan filed an amended petition and an amended motion to withdraw his plea. With respect to his petition and amended petition for postconviction relief, Sullivan contended his trial counsel was ineffective by failing to inform Sullivan of the evidence against him and by pressuring Sullivan to believe that he would receive the death penalty if he did not plead guilty. In addition, Sullivan contended that his conviction for having weapons under disability was barred by the Double Jeopardy Clause as he was convicted of the same offense in Cuyahoga County. That charge involved the same date as the charge in the instant matter. Following the murder, Sullivan was stopped by police in Cuyahoga County for speeding and was arrested pursuant to an unrelated warrant. The gun was discovered during an inventory search and was later

2

determined to be the murder weapon. Thus, Sullivan was charged with having weapons while under disability in both Cuyahoga and Lorain Counties.

{¶6} The State moved to dismiss Sullivan's amended petition and opposed his motion to withdraw his plea. The State argued that Sullivan failed to establish substantive grounds for relief in his amended petition and also asserted that Sullivan's double jeopardy argument was barred by res judicata. Sullivan responded in opposition to the State's motion. The trial court set the matter for a hearing. In the interim, briefing in the direct appeal was stayed pending the resolution of Sullivan's trial court filings. Ultimately, hearings were held in the trial court on February 7, 2022, and February 17, 2022.

{¶7} The trial court denied Sullivan's petition and his motion to withdraw his plea on the merits. Sullivan then appealed, and this Court consolidated both appeals.

{¶8} Sullivan raises two assignments of error related solely to the entry denying his petition for postconviction relief.

*State v. Sullivan* ("*Sullivan I*"), 2023-Ohio-3520, 2023 WL 6345825, at *1-2 (Ohio Ct. App., Sept. 29, 2023).

### III. Procedural History

#### A. State Conviction

On September 14, 2018, the Lorain County grand jury indicted Sullivan with the following seven counts: Count One Aggravated Murder, a special felony in violation of Ohio Revised Code ("O.R.C.") 2903.01(A); Count Two Murder, a special felony in violation of O.R.C. 2903.02(A); Count Three Murder, a special felony in violation of O.R.C. 2903.02(B); Count Four Felonious Assault, a second degree felony in violation of O.R.C. 2903.11(A)(1); Count Five Felonious Assault, a second degree felony in violation of O.R.C. 2903.11(A)(2); Count Six Tampering with Evidence, a third degree felony in violation of O.R.C. 2921.12(A)(1); and Count Seven Having Weapons While Under Disability, a third degree felony in violation of O.R.C. 2923.13(A)(2). (ECF Doc. 9-1, pp. 4-6). Counts One though Six each included a firearm specification. (*Id.*).

A September 25, 2018 journal entry demonstrates that the court appointed counsel and Sullivan pled not guilty to the charges in the indictment. (*Id.* at p. 7).

A December 11, 2018 journal entry reveals that Sullivan withdrew his former plea of not guilty and entered a plea of guilty to the charges in the indictment. (*Id.* at pp. 8-11). As part of the plea, Sullivan acknowledged that he understood his constitutional rights and that no one had used force or made promises to him in exchange for his guilty plea. (*Id.* at p. 11). This journal entry also lists a merger analysis that states: Counts "2, 3, 4 & 5 are allied offenses and lesser included offenses of c[oun]t 1. State elects for sentencing on c[oun]t 1. . . ." (*Id.* at p. 10). Thereafter, Sullivan was sentenced to an aggregate sentence of life in prison with parole eligibility after 39 years. (*Id.* at p. 14). He was credited with 31 days of jail time credit. (*Id.*).

**B.       Direct Appeal and Post Conviction Proceedings**

Sullivan filed a pro se notice of appeal to Ohio's Ninth District Court of Appeals on January 10, 2019. (*Id.* at p. 18).

On August 29, 2019, Sullivan, through counsel, filed a motion to stay appellate briefing because he needed to "sort out what issues [we]re appropriate for this appeal versus a post-conviction motion in the trial court." (*Id.* at pp. 33-34). The appellate court denied the motion on September 23, 2019, and ordered Sullivan's appellate brief due 20 days after journalization of the order. (*Id.* at p. 35).

On December 6, 2019, Sullivan, pro se, filed a motion to withdraw his guilty plea in the state trial court. (*Id.* at pp. 39-43). In his motion, Sullivan argues that he was "lied to and pressured to take a plea from his attorney" who told him "that he would get the death penalty if he didn't take a plea . . . ." (*Id.* at p. 43). Sullivan also asserts that his counsel "forg[ed]

4

documents." (*Id.*). The state trial court summarily denied Sullivan's motion on December 13, 2019. (*Id.* at p. 44).

On March 17, 2020, Sullivan, through counsel, filed a petition for post-conviction relief and a motion to withdraw his plea with the state trial court. (*Id.* at pp. 45-74). In his petition, Sullivan asserted that his trial counsel was ineffective for failing to review discovery with him and coerced him to plead guilty to the indictment, claiming he risked the death penalty if he did not. (*Id.* at pp. 49-51). Sullivan amended his petition and motion on March 20, 2020, to add his affidavit. (*Id.* at pp. 87-91). The state of Ohio filed a motion to dismiss the petition for post-conviction relief and its response in opposition to the motion to withdraw plea on March 31, 2020. (*Id.* at pp. 109-25). Sullivan opposed the motion to dismiss. (*Id.* at pp. 126-30).

On March 18, 2020, Sullivan, through counsel, again requested that briefing be stayed in the appellate court after filing his petition for post-conviction relief with the trial court. (*Id.* at pp. 36-37). Sullivan argued that stay was necessary because in his post-conviction relief petition, "he seeks to vacate his guilty pleas because of ineffective assistance of counsel using information outside of the record in this appeal." (*Id.* at p. 36). The appellate court granted this motion on April 20, 2020. (*Id.* at p. 38).

Due to the COVID-19 pandemic, the state trial court did not commence a hearing on Sullivan's motions until February 7, 2022. (*Id.* at p. 132; *see also* ECF Doc. 9-2, pp. 23-190). On March 25, 2022, the state trial court denied Sullivan's petition for post-conviction relief and motion to withdraw his guilty plea, finding that he had not met his burden establishing ineffective assistance of counsel. (ECF Doc. 9-1, pp. 131-38). Sullivan appealed the court's decision, and his direct appeal of his conviction was returned to the active docket of Ohio's Ninth District Court of Appeals. (*Id.* at pp. 139, 140). Sullivan moved the appellate court to

5

consolidate both appeals, which the court granted on July 8, 2022. (*Id.* at pp. 149-50, 151-52, 153).

Sullivan filed an appellate brief raising the following assignments of error:

1. The trial court erred by denying appellant's post-conviction relief petition based on ineffective assistance of counsel.

2. The trial court erred by sentencing appellant to weapon under disability and denying appellant's post-conviction relief petition in violation of appellant's constitutional rights against double jeopardy.

(*Id.* at pp. 154-85). The state of Ohio filed its appellee brief in January 2023. (*Id.* at pp. 186-213). Sullivan filed a reply brief in support of his appeal. (*Id.* at pp. 214-19). The state appellate court denied Sullivan's appeal and affirmed the trial court's judgments on September 29, 2023. (*Id.* at pp. 220-27; *see also Sullivan I*, 2023 WL 6345825.

Sullivan appealed, through counsel, to the Ohio Supreme Court on November 13, 2023. (*Id.* at pp. 229-30). In his memorandum in support of jurisdiction, Sullivan raised the following propositions of law:

1. Effective assistance of counsel means having an attorney who does not place undue or coercive pressure on a defendant to plea.

2. A weapon under disability offense committed contemporaneously while traveling across county lines is one offense. Subsequently, a conviction in each county violates the Double Jeopardy Clause of the United States and Ohio Constitutions.

3. A violation of the Double Jeopardy Clause of the United States and Ohio Constitutions, is a manifest injustice that is not subject to res judicata.

4. When a defendant alleges, in a post-conviction motion, ineffective assistance of counsel based on counsel's advice to plea guilty, the allegation preserves all errors associated with the advice to plea.

5. When the appellee does not argue, in its brief, that the appellant waived a claim, the appellate court should not apply waiver only against the appellant.

(*Id.* at pp. 231-48). The state of Ohio filed a responsive brief on December 12, 2023. (*Id.* at pp. 249-59). The Ohio Supreme Court declined jurisdiction on January 23, 2024. (*Id.* at p. 260; *see also State v. Sullivan*, No. 2023-1451, 225 N.E.3d 1031 (Ohio 2024) (table)).

| IV. | **Federal Habeas Corpus Petition** |
|---|---|

Sullivan brings one ground for relief for this Court's review:

**Ground One:** Ineffective Assistance of Counsel

**Supporting Facts:** Attorney Nici told me that the state was going to kill me if I did not sign a piece of paper. I found out later that my case was not a death penalty case and he did not show me any evidence.

(ECF Doc. 1, pp. 6-7) (cleaned up).

| V. | **Standard of Review** |
|---|---|

AEDPA applies to Sullivan's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a),

(b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual

determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432

9

(6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI. Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A. Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.      Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and

is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

12

(1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

**VII.        Discussion**

In Sullivan's sole ground for habeas relief before this Court, he argues that he received ineffective assistance of trial counsel because his attorney allegedly misled him to induce a guilty plea and in doing so failed to share evidence with him. (ECF Doc. 1, pp. 6-7). Respondent contends that "[t]his issue is without merit, and the state appellate court's reasonable decision rejecting this ground is entitled to AEDPA deference." (ECF Doc. 9, p. 9). In his Traverse, Sullivan contends that "[w]here counsel continuously lied to petitioner and threatened Petitioner with the death penalty to induce Petitioner's guilty plea, it cannot be said that counsel's representation falls within the prevailing professional norms." (ECF Doc. 11, p. 3). He argues, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) that his trial counsel's performance was deficient, and those decencies prejudiced him. (*Id.* at pp. 3-13).[1]

It is undisputed that Sullivan fairly presented his claim for ineffective assistance of counsel in his state court proceedings by raising it on direct appeal (ECF Doc. 9-1, pp. 167-72) and before the Ohio Supreme Court (*Id.* at pp. 231-48). Therefore, Sullivan is only entitled to habeas relief if he can establish that adjudication of his claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d)(1)-(2).

---

[1] I note that Sullivan, at times, phrases his argument in terms of whether or not he made his guilty plea knowingly, intelligently, and voluntarily. (*See* ECF Doc. 11, pp. 2, 8). However, Sullivan's Petition did not raise this issue as a ground for relief. (*See* ECF Doc. 1). Rather, he only raised the issue regarding his counsel's performance. (*Id.*). A habeas petitioner cannot raise new grounds for relief in the traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jenkins v. Welch*, No. 4:09CV637, 2010 WL 1948297, at *15 (N. D. Ohio Apr. 26, 2010). Accordingly, this report and recommendation does not address arguments not raised in the Petition.

13

Neither party disputes that the clearly established federal law applicable here is the Sixth Amendment's guarantee of the right to effective counsel as announced in *Strickland v. Washington*, 466 U.S. 668, (1984). The Sixth Amendment provides in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citation omitted).

14

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the state appellate court analyzes an ineffective assistance of counsel claim on the merits, a federal habeas court applies AEDPA deference to the state court's adjudication pursuant to § 2254(d). *Perkins v. McKee*, 411 F. App'x. 822, 828 (6th Cir. 2011). The U.S. Supreme Court explained the added layer of deference as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 103-05 (2011).

Here, the Ninth District considered the issue[2] as follows:

---

[2] I note that the ineffective assistance of counsel claim is couched in terms of a petition for post-conviction relief. As mentioned in the state court history portion of this report and recommendation, Sullivan's direct appeal was consolidated with the appeal of denial of his petition for post-conviction relief. (ECF Doc. 9-1, pp.149-50, 151-52, 153). The state appellate court's review was on this issue invoked both the state law issue of post-conviction relief and the federal effective assistance of counsel standard under *Strickland.* Further, in the return of writ, Respondent asserts that that Sullivan fairly presented his ground for relief. (ECF Doc. 9, p. 7). I therefore find no issue in terms of fair presentation and proceed to review Sullivan's habeas claim on the merits.

{¶9} Sullivan argues in his first assignment of error that the trial court erred in denying his petition for postconviction relief as he was denied the effective assistance of counsel.

{¶10} "A trial court's denial of a petition for post-conviction relief is reviewed for an abuse of discretion. *State v. Smith*, 9th Dist. Summit Nos. 29779, 29780, 2021-Ohio-1177, ¶ 8. An abuse of discretion is more than an error of law or judgment; it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983)." *State v. Brantley*, 9th Dist. Summit No. 29924, 2021-Ohio-4621, ¶ 6.

When a petitioner's post-conviction claim sounds in ineffective assistance of counsel, a trial court must analyze his * * * claim under the two-step test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficiency prejudiced him. *Strickland* at 687.

In the context of a guilty plea, prejudice will lie only if there is a reasonable probability that, but for * * * counsel's error, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. To that end, ineffective assistance will only be found to have affected the validity of the plea when it precluded the defendant from entering the plea knowingly and voluntarily.

(Internal quotations and citations omitted.) *Smith* at ¶ 9.

{¶11} In his petition, Sullivan contended that trial counsel was deficient by failing to inform Sullivan of the evidence against him and unduly pressuring Sullivan to believe that he would receive the death penalty if he did not plead guilty. Sullivan also submitted an affidavit wherein he averred that he would have chosen to go to trial if his trial counsel had shown him the discovery materials and not pressured him into believing he would receive the death penalty if Sullivan would have gone to trial.

{¶12} During the hearing on the petition, both Sullivan and trial counsel testified. Sullivan essentially contended that trial counsel never showed Sullivan any of the discovery including the video of the shooting. Sullivan denied shooting the victim and claimed that police coerced his confession by showing him a loaded weapon and writing down on a white board what police wanted Sullivan to say. Sullivan also testified that as early as September 2018, trial counsel told Sullivan to plead guilty "before they kill you." Sullivan maintained that trial counsel repeatedly told Sullivan that he needed to plead "before they put a needle in your arm and kill you." Yet, Sullivan also claimed that trial counsel never told Sullivan that the prosecutor had plans to add a capital specification if Sullivan did not plead guilty. Sullivan claimed that trial counsel did not discuss the plea forms in detail with Sullivan despite his statements to the contrary at the plea hearing. Sullivan maintained that the plea sheets he signed were blank when he signed them.

16

{¶13} Trial counsel's testimony contradicted Sullivan's. Trial counsel testified that he has been practicing law since 1997 and that criminal defense represented about 95% of his practice. He is certified to handle capital cases. Trial counsel discussed in detail the discovery he shared with Sullivan, including the video which they watched multiple times. Trial counsel stated that, on the video, Sullivan could be seen shooting the victim, and Sullivan could also be seen coming out of the woods, turning, walking right by the camera, and looking up. Trial counsel's detailed notes and billing statement were also presented as evidence. Trial counsel additionally testified that even as early as August 2018, there was a concern as to the possibility of a "capital component[.]" Trial counsel indicated that the case had the hallmarks of a death penalty case in that Sullivan made statements to the police about what happened, was on video committing the crime, and the crime was a murder for hire. Trial counsel discussed these concerns with Sullivan and also informed him of the possible penalties. Trial counsel discussed the proposed plea with Sullivan and gave him time to think about it. Prior to the plea, the prosecutor told trial counsel that if Sullivan did not plead the prosecutor planned to go back to the grand jury to add a capital specification. Trial counsel relayed that information to Sullivan. Trial counsel denied that he began encouraging Sullivan to plead even before discovery was reviewed.

{¶14} In ruling on Sullivan's petition, the trial court specifically stated that it found "Sullivan's self-serving testimony lack[ed] credibility." The trial court additionally found that trial counsel's testimony was credible. The trial court went on to state:

Sullivan's testimony that he was never shown the video or other discovery; that [trial counsel] never even discussed discovery; and that on every visit with Sullivan all [trial counsel] ever[ ] said was that Sullivan should plead guilty or the State was going to kill him all lacked credibility. [Trial counsel's] credible testimony was corroborated by his billing statement.

{¶15} As the Supreme Court has noted, "the trial court 'sees and hears the live postconviction witnesses, and [it] is therefore in a much better position to weigh their credibility than are the appellate judges.'" *State v. Weaver*, Slip Opinion No. 2022-Ohio-4371, ¶ 25, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 55. Given the trial court's credibility determinations, we cannot say that Sullivan has demonstrated that the trial court abused its discretion in denying Sullivan's petition on the basis of his ineffective assistance of counsel argument. There was evidence presented that trial counsel shared discovery with Sullivan and kept him informed about the case. Trial counsel's testimony contradicted Sullivan's on the issues argued by Sullivan, and the trial court found trial counsel's testimony to be credible. Sullivan has not demonstrated that the trial court abused its discretion in concluding that trial counsel was not deficient, and that Sullivan did not demonstrate prejudice.

{¶16} Sullivan's first assignment of error is overruled.

17

*Sullivan I*, 2023 WL 6345825, at *2-3.

A review of the state appellate court's decision reveals that it appropriately applied the standard defined by the United States Supreme Court in *Strickland*. In doing so, the court determined that counsel's performance was not deficient, Sullivan had not demonstrated prejudice, and thus Sullivan's Sixth Amendment rights were not violated. Likewise, applying the double-deference required of a federal court sitting in habeas review, I find that Ohio's Ninth District Court of Appeals' denial of his ineffective assistance of counsel claim was not contrary to and did not involve an unreasonable application of federal law.

I next turn to whether or not the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented and find that it did not.

On this point, Sullivan takes issue with the state trial court's credibility determination. He quotes the trial court's findings that Sullivan's testimony was not credible while counsel's was and argues "the Itemized Fee Statement provided by . . . counsel, certifying the time expended in representing Petitioner, seriously contradicts counsel's testimony." (ECF Doc. 11, p. 10). He argues that "[i]n a case of this magnitude, it cannot be disputed that only 27.5 'Out-of-Court' hours over the course of four months would be insufficient to review the complete (or sufficient) discovery with Petitioner . . . .'" (*Id.* at p. 11). Sullivan claims that the appellate court should not have based its determination of the relative credibility of himself and trial counsel's on a billing statement which documented only 27.5 hours spent in out-of-court service between August 20, 2018 and December 1, 2018. (*Id.* at pp. 10-11). This point is not well taken.

The Supreme Court has observed that in the habeas context, "[t]he term 'unreasonable' is no doubt difficult to define." *Wood v. Allen*, 558 U.S. 290, 301 (2010) quoting *Williams v.*

18

*Taylor,* 529 U.S. 362 (2000). "It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* This court must defer to the state court's determination of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986). The state court's determination of a factual issue is presumed correct, and habeas petitioners bear the burden to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2554(e)(1).

Here, the state appellate court acknowledged the issue of the trial court's credibility determination that is the basis of Sullivan's argument. *Sullivan* I, 2023 WL 6345825 at *3 ("the trial court specifically stated that it found 'Sullivan's self-serving testimony lack[ed] credibility.' The trial court additionally found that trial counsel's testimony was credible."). The appellate court then noted that the Ohio Supreme Court has found trial courts to be in a better position to decide credibility than appellate courts. (*Id.*). Following these acknowledgements, the appellate court found "There was evidence presented that trial counsel shared discovery with Sullivan and kept him informed about the case. Trial counsel's testimony contradicted Sullivan's on the issues argued by Sullivan" before concluding that Sullivan had not established that his counsel's performance was deficient nor that he was prejudiced. Because the state appellate court's analysis included its consideration of the credibility issue, and this Court must be deferential to its finding on issues of state law, I find that Sullivan has not rebutted the presumption of correctness by clear and convincing evidence simply because he believes this court should reach a different conclusion.

As the state court decision denying Sullivan's ineffective assistance of counsel claim was consistent with clearly established Federal law and was based upon a reasonable determination

19

of the facts in light of the evidence produced, I recommend that the District Court deny Sullivan's sole ground for relief.

**VIII.          Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the District Court accepts my recommendation, Sullivan will not be able to show that reasonable jurists could disagree with the District Court's resolution of his ineffective assistance of counsel claim. The state appellate court reviewed the claim in accordance with *Strickland v. Washington*, 466 U.S. 668 (1984), and Sullivan did not rebut the presumption of correctness regarding the factual determinations of the state appellate court. For these reasons I recommend that no certificate of appealability issue in this case.

## IX.     Recommendation

For the foregoing reasons, I recommend that Sullivan's Petition for a writ of habeas

corpus be denied. I further recommend he be denied a certificate of appealability.


Dated: March 4, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE


### OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).